# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

DEUTSCHE BANK TRUST COMPANY AMERICAS, in its capacity as successor indenture trustee for certain series of Senior Notes, LAW DEBENTURE TRUST COMPANY OF NEW YORK, in its capacity as successor indenture trustee for certain series of Senior Notes, and WILMINGTON TRUST COMPANY, in its capacity as successor indenture trustee for the PHONES Notes,

Plaintiffs,

vs.

ANNE G. TAYLOR as an Individual and as a Trustee of the TRUST U/A DTD 10-16-2000 BY WALTER K. GRAHAM FBO WALTER E. GRAHAM; BERNARD E. & EDITH B. WATERMAN CHARITABLE FOUNDATION; BEVERLY MACKINTOSH as an Individual and as a Trustee of the Trust U/A DTD 8-22-1989 BY MARY CONIGLIO; BEVERLY MACKINTOSH as an Individual and as a Trustee of the Trust U/A DTD 8-22-1989 BY MARY CONIGLIO GSTT TE TRUST; BOSTON TRUST & INVESTMENT MANAGEMENT COMPANY; CAMBRIDGE APPLETON TRUST CO.; FIFTH THIRD BANK; COLLEGES OF APPLIED ARTS AND TECHNOLOGY PENSION PLAN; COMMERCIAL BANKING CLIENT RANG; CONNELL FAMILY PARTNERSHIP TRUST; FRANCIS L. COOLIDGE; DT BROAD MARKET STOCK INDEX FUND; EDWIN J. HAYES as an Individual and as a Trustee of the TRUST U/A DTD 5-26-2006 BY EDWIN J. HAYES JR.; EMPLOYERS' FIRE INSURANCE COMPANY; EQUISERVE EXCHANGE AGENT OVERAGE; FIDUCIARY SSB; FIDUCIARY TRUST CO.; GBL ALPHA EDGE COMMON TRST FD & TRUST COMPANY; FREDERICK GOLDSTEIN; ANNE-MARIE S. GREENBERG; HARVARD UNIVERSITY; I.B.E.W. 103; IBEW LOCAL 103 PENSION PLAN; INVESTORS BANK AND TRUST INSTITUTIONAL COMPANY; INVESTORS BANK & TRUST; GEORGE E. KEELER; LOOMIS SAYLES CREDIT ALPHA FUND; LPL FINANCIAL; MANAGED PENSION FUNDS LIMITED (MFS FUNDS (UK)); MANULIFE INVST EX FDS

Case No. 11-cv-10982

CORP.-MIX; MANULIFE U.S. EQUITY FUND; MARGARET R. CONIGLIO as an Individual and as a Trustee of the TRUST U/A/ DTD 8-22-1989 BY MARGARET R. CONIGLIO TRUST; MARSHFIELD CLINIC MASTER TRUST; MASSMUTUAL PREMIER ENHANCED INDEX VALUE FUND; MASSMUTUAL PREMIER MAIN STREET SMALL CAP FUND; MASSMUTUAL PREMIER SMALL COMPANY OPPORTUNITIES FUND; MASSMUTUAL SELECT DIVERSIFIED VALUE FUND; MASSMUTUAL SELECT INDEXED EQUITY FUND; MILL SHARES HOLDINGS (BERMUDA) LTD.; MML BLEND FUND; MML EQUITY INCOME FUND; NORTHERN ASSURANCE CO. OF AMERICA; ONEBEACON AMERICA INSURANCE CO.; ONEBEACON INSURANCE CO.; ONEBEACON INSURANCE PENSION PLAN; ONEBEACON INSURANCE SAVINGS PLAN; ONEBEACON INSURANCE SAVINGS PLAN – EQUITY 401K; ONEBEACON INSURANCE SAVINGS PLAN – FULLY MANAGED; ONTARIO PENSION BOARD; PALMER & DODGE; PENNSYLVANIA GENERAL INSURANCE CO.; PENSION RESERVES INVESTMENT TRUST FUND; PUTNAM S&P 500 FUND; PUTNAM S&P 500 INDEX FUND; PUTNAM FIDUCIARY TRUST COMPANY, TRUSTEE; RE STATE ST. BANK & TRUST CO.; GBL ALPHA EDGE COMMON TRUST FD; REED US RETIREMENT PLAN; RHUMBLINE S.A. FREE S&P INDEX; DOROTHY RUSSELL SHATTUCK; SSBT ONMIBUS ACCOUNT; SSB-TRUST CUSTODY; STATE STREET BANK & TRUST; STATE STREET AMR; STATE STREET BANK & TRUST CO. AS SUCCESSOR TO INVESTORS BANK TRUST COMPANY; STATE STREET BANK & TRUST CO. AS SUCCESSOR TO INVESTORS BANK TRUST COMPANY/INSTITUTIONAL CUSTODY; STATE STREET BANK & TRUST CO./IBT-ACCOUNT # 2; STATE STREET BANK & TRUST COMPANY; STATE STEET TRUST AND BANKING; TRUST U/A A. JOHNSON FBO C. BOYNTON; TRUSTEES OF BOSTON COLLEGE; UD VIRGINIA S. RISLEY JT RISLEY; JOHN T. RISLEY; UD VS RISLEY CJ DE SIEYES ET AL; DR. CHARLES J. DE SIEYES; UD VS RISLEY DC DE SIEYES ET AL; DAVID C. DE SIEYES; VIKRAM PARVATANENI; and BERNARD E. WATERMAN AND EDITH B. WATERMAN, JTWROS;

and EMPLOYERS' FIRE INSURANCE COMPANY;
GEORGE E. KEELER; EDWIN J. HAYES, JR.;
FREDRICK GOLDSTEIN; WALTER K. TAYLOR;
MATSCO INCORPORATED; THE PEOPLES BANK;
REPUBLIC BANK AND TRUST CO.; KAREN RAPKIN;
MARCIA TINGLEY; ALOYSIUS J. FRANZ; and
RICHARD PANIAGUA, on behalf of themselves and a
class of similarly situated persons and entities,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION TO EXTEND TIME FOR SERVICE OF SUMMONS AND COMPLAINT**

Plaintiff Deutsche Bank Trust Company Americas, in its capacity as successor indenture trustee for a certain series of Senior Notes ("DBTCA"), Plaintiff Law Debenture Trust Company of New York, in its capacity as successor indenture trustee for a certain series of Senior Notes ("Law Debenture"), and Plaintiff Wilmington Trust Company, in its capacity as successor indenture trustee for the PHONES Notes ("Wilmington Trust" and, together with DBTCA and Law Debenture, "Plaintiffs"), through Plaintiffs' undersigned counsel, respectfully move this Court, pursuant to Federal Rules of Civil Procedure ("FRCP") 4(m) and 6(b)(1)(A), for an order extending the deadline for service of the summons and amended complaint in this action (as the amended complaint may be further amended from time to time, subject to and in accordance with FRCP 15 and 21), and the time period referenced in FRCP 15(c)(1)(C), by six months, through and including March 30, 2012, and if necessary modifying the stay entered by this Court on July 6, 2011 for the limited purpose of providing such relief.  The original 120-day FRCP 4(m) and 15(c) periods have not yet expired.

**BACKGROUND**

On June 2 and 3, 2011, Plaintiffs commenced 50 substantially similar actions, including the instant action (collectively, the "Avoidance Actions"), in courts located in 22 states, each

3

alleging constructive fraudulent conveyance claims arising under state law (the "SLCFC Claims").[1]  Morrier Decl. ¶ 3.  The amended and currently operative complaint in this action was filed on August 22, 2011 (the "Amended Complaint").  The Avoidance Actions seek to claw back from approximately 35,000 former shareholders of Tribune Company ("Tribune") and other transferees billions of dollars that were fraudulently conveyed in connection with a disastrous 2007 leveraged buy-out (the "LBO") of Tribune that drove Tribune into bankruptcy a year later.  Am. Compl. ¶¶ 1-2.

The LBO closed in two stages.  Shareholder Transfers (as defined in paragraph 6 of the Amended Complaint) were made in connection with "Step One" of the transaction on or after June 4, 2007, and were made in connection with "Step Two" of the transaction on or after December 20, 2007.  Am. Compl. ¶ 6.  The primary reason that the LBO transaction was consummated in two steps was because Tribune's largest shareholders demanded a structure that would provide shareholders an upfront payment in advance of the regulatory approval necessary to complete the transaction.

Tribune's bankruptcy proceedings were commenced on December 8, 2008 (the "Bankruptcy Proceedings") (Case No. 08-13141 (KJC)), and are currently pending before Judge Kevin J. Carey in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  Am. Compl. ¶¶ 12-13.  Under sections 546(a) and 544(b) of the Bankruptcy Code, Debtors in the Tribune Bankruptcy Proceedings had the right during the first

---

[1] Plaintiffs commenced more than one action in 19 of the 22 states, including Massachusetts, *Deutsche Bank Trust Company Americas, et al. v. Eaton Vance Multi Cap Growth Portfolio, et al.*, Civil Action No. 11-CV-10985-NMG (D. Mass. 2011), to address actual, potential, arguable or claimed ethical and business conflicts of interest involving Plaintiffs' counsel and certain defendants.  This motion seeks no relief of any kind against any of the defendants, or concerning any of the claims as to which Plaintiffs are represented by counsel other than the undersigned counsel.

two years after the Bankruptcy Proceedings were commenced to bring the SLCFC Claims on behalf of individual Tribune creditors.[2]  Morrier Decl. ¶ 4.

The Debtors did not commence any SLCFC Claims against Tribune shareholders during the two-year period following commencement of the Bankruptcy Proceedings.  Morrier Decl. ¶ 5.  Thus, DBTCA, Law Debenture, and others moved the Bankruptcy Court for an order providing, *inter alia*, that (i) individual creditors of Tribune regained the right to prosecute the SLCFC Claims against Tribune shareholders because the Debtors had failed to do so; and (ii) the automatic stay, to the extent otherwise applicable, did not bar Plaintiffs from bringing the SLCFC Claims against Tribune shareholders (the "Standing Motion").  Am. Compl. ¶ 13.  On April 25, 2011, the Bankruptcy Court granted the Standing Motion and issued an order (the "Standing Order") permitting Plaintiffs to bring the SLCFC Claims, in part to ensure that they would be commenced on or before June 4, 2011—four years after Step One of the LBO closed— and thus avoid any argument that some of the SLCFC Claims could be barred by allegedly applicable statutes of limitations.  The Standing Order also required Plaintiffs to seek an immediate stay of any action alleging SLCFC Claims (subject to certain caveats) pending further court order.  Am. Compl. ¶ 13.

Plaintiffs went to work immediately in an effort to gather the information necessary to identify the appropriate defendants in connection with the SLCFC Claims, and to name and serve those defendants in the Avoidance Actions.  Morrier Decl. ¶ 6.  On or around April 29, 2011, certain of the Plaintiffs and others issued a subpoena (the "Subpoena") in the Bankruptcy Proceedings to the Official Committee of Unsecured Creditors of Tribune (the "Committee") seeking, among other information, the addresses and precise names of each natural person and

---

[2]  The SLCFC Claims arise under the fraudulent transfer laws of New York, Illinois, and Massachusetts.

juridical entity that received cash proceeds and/or other consideration in connection with the LBO, and the amount each such person or entity received. Morrier Decl. ¶ 6. Plaintiffs have also retained private investigators to obtain additional information, and have conducted their own inquiries using publicly available commercial databases. Morrier Decl. ¶ 6.

Beginning in November, 2010, the Committee issued more than 1,600 subpoenas of its own seeking defendant identities and other data in connection with the Committee's adversary proceeding against, *inter alia*, Tribune's former shareholders in which the Committee alleges claims of intentional fraudulent transfer pursuant to the Bankruptcy Code.[3] Morrier Decl. ¶ 7. The Committee made a substantial initial production of shareholder data to the Plaintiffs on May 25, 2011, just ten days before the purported statute of limitations for certain of the SLCFC Claims arguably was set to expire. At the time, however, the Committee had not yet received all of the information sought by its subpoenas.[4]

Given the looming expiry of an arguable limitations period, Plaintiffs had no choice but to commence the SLCFC Claims immediately, even though identities of, and contact information for, all defendants and potential defendants was not yet available. Hence, on June 2 and 3, 2011,

---

[3] Section 548(a) of the Bankruptcy Code entitles the bankruptcy trustee—or an authorized proxy for the bankruptcy trustee, such as the Committee—to bring fraudulent conveyance claims on behalf of the estate. The Committee elected to pursue against Tribune's former shareholders only *intentional* fraudulent conveyance claims under the Bankruptcy Code on behalf of the estate, claims which are separate and distinct from state law *constructive* fraudulent conveyance claims asserted by Plaintiffs in the Avoidance Actions on behalf of certain individual pre-LBO creditors of Tribune.

[4] The Committee continues to pursue compliance with its subpoenas to this day. Indeed, the Committee recently advised Plaintiffs that it has yet to obtain the necessary naming and service information associated with several billion dollars worth of transfers, and that a motion or motions to compel production of the remaining data will likely be required. The Committee has not yet determined a schedule for bringing such motions, but even if it were to do so immediately, it is improbable that the Committee would obtain the necessary judicial relief—much less compliance from the parties subject to the subpoenas and any court orders – before the first quarter of 2012, at the earliest. In short, while the Committee has indicated that it will continue to produce to Plaintiffs information received by the Committee in response to its subpoenas, complete information needed to ensure proper identification and service on all parties may not be available for several months. Morrier Decl. ¶ 7 n.3.

Plaintiffs filed the Avoidance Actions alleging the SLCFC Claims on behalf of the noteholders under the indentures for which Plaintiffs respectively act as trustees. This Court granted Plaintiffs' motion to stay the captioned action by order dated July 6, 2011 (the "<u>Stay Order</u>").[5]

## ARGUMENT

Plaintiffs have been unable to complete service upon all of the named defendants in this action, and anticipate that substantially more than the initial 120 days provided under FRCP 4(m) will be required to permit discovery of additional necessary information and completion of service. Plaintiffs therefore respectfully request that the Court enter an order enlarging the time for service of the complaint by an additional six months, and providing that FRCP 4(m) may be satisfied by service of the amended complaint (as it may be further amended from time to time, subject to and in accordance with FRCP 15 and 21) on or before March 30, 2012, and that the period referenced in FRCP 15(c) shall likewise be enlarged by six months.

The requested extension of time is more than justified under the circumstances presented on this motion. FRCP 4(m) provides, in pertinent part:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. ***But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period***.

---

[5] The Stay Order does not contain any language specifically precluding motions that seek only to enlarge time periods provided under the FRCP. However, to the extent the Court deems it necessary, Plaintiffs further request that the Court grant relief from the stay for good cause shown, *nunc pro tunc* to the date Plaintiffs' motion was filed, in light of the fast-approaching original FRCP 4(m) and 15(c) deadlines, the manifest prejudice Plaintiffs could suffer were the filing of their motion delayed by the existence of the Stay Order, and the absence of any conceivable unfair prejudice to the defendants associated with permitting the motion to proceed.

FRCP 4(m) (emphasis added). The requested relief also is authorized by FRCP 6(b)(1)(A), which provides that "when an act may or must be done within a specified time, the court may, *for good cause*, extend the time with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires." FRCP 6(b)(1)(A) (emphasis added). As noted above, the original periods at issue on this motion have not yet expired. Morrier Decl. ¶ 12.

Good cause under FRCP 4(m) is assessed under a standard of excusable neglect, which requires that the plaintiff show "good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules." *MCI Telecom. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995); *see also Moreno-Perez v. Toledo-Devila*, 266 F.R.D. 46, 50 (D. P.R. 2010) (plaintiff showed good cause for extension of time to serve under rule 4(m) by making reasonable efforts to serve within the prescribed time limit). Whether or not good cause exists can turn on a number of factors, including (i) "the reasonableness of the plaintiff's efforts to serve," (ii) "prejudice to a defendant from untimely service," and (iii) "whether the plaintiff moved for an enlargement of the time to serve." *Jumpp v. Jerkins*, No. 08-6268 (RBK/KMW), 2010 WL 715678, slip op. at *7 (D.N.J. Mar. 1, 2010). Accordingly, courts should extend the time to serve when the plaintiff exhibits "substantial diligence, professional competence and good faith." *Golden v. Guardian (In re Lenox Healthcare, Inc.)*, 319 B.R. 819, 822 (Bankr. D. Del. 2005); *see also Arroyo v. Wheat*, 102 F.R.D. 516, 518 (D. Nev. 1984) ("Congress intended that a plaintiff who had made reasonable efforts to effect service would be permitted additional time, if needed.").[6] Moreover, even if good cause cannot be shown, courts may extend the time to serve at their discretion. In doing so, courts

---

[6] If anything, the good cause hurdle of FRCP 6(b)(1)(A) is lower than under FRCP 4(m) where, as here, the FRCP 6(b)(1)(A) motion is made before the original period at issue has expired.

8

balance numerous other considerations to determine whether an extension of time for service is nonetheless warranted. *Jumpp*, 2010 WL 715678, at *7; *Riverdale Mills Corp. v. U.S. Dept. of Transp.*, 225 F.R.D. 393, 395-96 (D. Mass. 2005) (providing an extension when the defendants have been given actual notice and they will not be prejudiced). These factors include the running of the statute of limitations, prejudice to the defendant, as well as "any other relevant factor." *Jumpp*, 2010 WL 715678, at *7.

An extension of the FRCP 4(m) period is clearly warranted under the standards articulated above. Plaintiffs have diligently sought, and continue to diligently seek, to identify and serve the defendants named in the instant case, but have faced serious, time-consuming challenges to doing so. Among other efforts, shortly after commencement of the action, Plaintiffs attempted personal service upon 49 of the named defendants through a private process server. Morrier Decl. ¶ 10. As of September 9, 2011, there remained 18 named defendants who had not yet been successfully served. Morrier Decl. ¶ 10. In addition, by way of further amendment, Plaintiffs intend to make corrections to names and addresses set forth in the pleadings and/or certain of Plaintiffs' previously-served summons, and may determine to individually name defendants within the putative defendant class. Out of an abundance of caution, Plaintiffs likely will seek to re-serve some or all parties that are affected by such corrections and additions with further process. Since filing the Complaint, Plaintiffs have received, and continue to receive, updated information with respect to these defendants, including by accessing commercial databases to check for correct names and addresses and by hiring private investigators to follow up on information provided by the Committee, and may seek to obtain limited discovery directly from certain defendants in the Avoidance Actions. Morrier Decl. ¶ 10.

Moreover, simultaneous with Plaintiffs' efforts to identify and properly serve defendants in this action, Plaintiffs also are attempting to carry out the same exercise with respect to more than a thousand other defendants in the rest of the Avoidance Actions pending around the country.[7] Obtaining the voluminous data necessary to effectuate nationwide service is an enormous undertaking by itself, and Plaintiffs anticipate that additional obstacles to perfecting service are likely to arise even once the necessary information has been gathered. Morrier Decl. ¶ 11. For example, Plaintiffs likely will be required to make multiple attempts to serve defendants using a variety of service methods authorized under the FRCP, deal with defendants who may seek to avoid or otherwise thwart Plaintiffs' attempts at service, and engage in further investigative efforts where necessary. Morrier Decl. ¶ 11.[8] For all the foregoing reasons, Plaintiffs submit that an extension which affords an additional six months to complete service—up to and including March 30, 2012—is appropriate. *See, e.g.*, *DLC DermaCare LLC v. Castillo*,

---

[7] Indeed, the Bankruptcy Court already has granted two Committee motions brought under FRCP 4(m), extending by a total of one year the Committee's deadline for service of the former Tribune shareholders and other transferees. On December 9, 2010, the Committee filed a motion requesting that the time to effectuate service be extended by six months. *Official Committee of Unsecured Creditors v. Fitzsimmons*, Adversary Pro. 10-54010 (KJC), ECF No. 69 (Bankr. D. Del. Dec. 9, 2010). The Bankruptcy Court granted this motion. *Id.* ECF No. 78 (Jan. 11, 2011). However, the effort to discover and serve defendants proceeded more slowly than the Committee had anticipated and the Committee found that it was unlikely to be able to serve all the defendants within the six-month extension period. *Id.* ECF No. 133 (July 8, 2011) ¶ 7. On July 8, 2011, the Committee filed its second motion to extend time to complete service for another six months. *Id.* The Court granted the Committee's second motion as well, bringing the total extension period to one year. *Id.* ECF No. 139 (July 25, 2011).

[8] Additionally, in this and other of the Avoidance Actions, Plaintiffs also will be required to seek to amend the complaint to add numerous new parties as defendants based on information unavailable to Plaintiffs at the time the complaint originally was filed. While these brand new defendants will be subject to a new 120-day 4(m) period running from the date of filing of the operative amendment(s), Plaintiffs will be required to allocate resources to identifying, naming and serving the new defendants at the same time that Plaintiffs are working to achieve service on existing defendants, which will further tax Plaintiffs' resources. *See* 4B CHARLES ALAN WRIGHT & ARTHUR MILLER, FED. PRAC. & PROC. § 1137 (3d ed. 2011) ("Adding a new party through an amended complaint initiates a new 120-day timetable for service upon the added defendant."); *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1148 (10th Cir. 2006) (same). Plaintiffs may need to return to the Court for a further extension of the FRCP 4(m) period for such defendants if it proves impractical to complete service upon them within the applicable FRCP 4(m) period.

No. CV-10-333-PHX-DGC, 2010 WL 5148073, at *1 (D. Ariz. Dec. 14, 2010) (granting extension of time for service on certain defendants based, *inter alia*, on the large number of defendants named in the complaint and the plaintiff's diligent efforts to effectuate service on some of the defendants, which included the use of process servers and private investigation techniques).[9]

The defendants and prospective defendants in this action will not be prejudiced by the requested extension of Plaintiffs' time to serve. This action is in its infancy: no discovery has taken place, and there have been no substantive hearings or rulings as of yet. Moreover, as noted, this Court has issued an order staying the time for the defendants to respond to the complaint or commence motion practice. *See* Order Granting Motion to Stay. Given this stay, there can be no harm to defendants as a result of Plaintiffs' proposed extension of time to serve the summons and complaint, and this motion should be granted accordingly. *Redtail Leasing, Inc. v. Thrasher (In re Motel 6 Sec. Litig.),* No. 93 Civ 2183 (JFK), 1995 WL 649930, at *1-2 (S.D.N.Y. Nov. 6, 1995) (granting plaintiff's request for additional time to serve in an action that had been stayed, and noting that "[t]he stay . . . supports a finding that even if Plaintiffs have failed to show good cause, Defendant has not been prejudiced and therefore equity warrants an extension of time").

---

[9] Any extension of the FRCP 4(m) period will also operate to extend the period allowed under FRCP 15(c)(1)(C) without the need for a further order of the court. *See, e.g., Riederer v. Dallas Nat'l Ins. Co. (In re Brooke Corp.),* No. 10-06162, 2011 WL 2441467, at *4 (Bankr. D. Kan. June 14, 2011) (finding that extensions of time to serve under FRCP 4(m) extend to FRCP 15(c) amendments); *Baez v. Kahanowicz,* 469 F. Supp. 2d 171, 177 n.6 (S.D.N.Y. 2007) (same); *PCT v. New Eng. Confectionary Co. (In re Fleming Cos.),* No. 05-78096(KJC), 2006 WL 1062476, at *1 (Bankr. D. Del. Apr. 20, 2006) (same); *Allen v. Nat'l R.R. Passenger Corp. (Amtrak),* No. Civ.A.03-CV-3497, 2004 WL 2830629, at *8 (E.D. Pa. Dec. 7, 2004) (same). Nevertheless, out of an abundance of caution, Plaintiffs ask that this Court expressly confirm that it is granting an extension to the FRCP 15(c)(1)(C) period that is coextensive with any extension of the FRCP 4(m) period, and the proposed order accompanying this memorandum so provides.

On the other hand, the prejudice that Plaintiffs would face without an extension would be great. As noted above, Step One of the LBO closed on June 4, 2007. While Plaintiffs commenced this action in a timely fashion on June 2, 2011, if the complaint were to be dismissed with respect to unserved defendants as a result of expiration of the 120-day period provided under FRCP 4(m), the defendants against whom the complaint was so dismissed might argue upon refiling that the statute of limitations for Plaintiffs' SLCFC Claims related to Step One of the LBO had lapsed. Were the Court to deem those claims to be time-barred, it would cause substantial, material prejudice and irretrievable loss to the Plaintiffs. These circumstances militate strongly in favor of extending Plaintiffs' time to serve the defendants. *See, e.g.*, *AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt., L.P.*, 197 F.R.D. 104, 109-10 (S.D.N.Y. 2000) ("Courts have consistently considered the fact that the statute of limitations has run on a plaintiff's claim as a factor favoring the plaintiff in a Rule 4(m) analysis. . . . The rationale for this principle is that dismissal under these circumstances would extinguish potentially meritorious claims without there being an opportunity to have them adjudicated on the merits.") (internal quotations and citations omitted).

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an order extending the deadline for service of the summons and amended complaint in this action (as the amended complaint may be further amended from time to time, subject to and in accordance with FRCP 15 and 21), and the time period referenced in FRCP 15(c)(1)(C), by six months, through and including March 30, 2012, and if necessary lifting the stay entered by this Court on July 6,

2011 for the limited purpose of providing such relief, and granting such other and further relief as the Court deems just and proper.

Dated:  September 12, 2011

Respectfully submitted,
DEUTSCHE BANK TRUST COMPANY AMERICAS,
LAW DEBENTURE TRUST COMPANY OF NEW
    YORK,
WILMINGTON TRUST COMPANY,
By their attorneys,


/s/ John T. Morrier
John T. Morrier, BBO #628624
Douglas K. Mansfield, BBO #318320
Donna M. Brewer, BBO #545254
Casner & Edwards, LLP
303 Congress Street
Boston, MA  02210
Telephone:  (617) 426-5900
Facsimile:  (617) 426-8810
morrier@casneredwards.com
mansfield@casneredwards.com
brewer@casneredwards.com

*Of Counsel:*

Daniel H. Golden, Esq. (*pro hac vice* application pending)
David M. Zensky, Esq. (*pro hac vice* application pending)
Stephen M. Baldini, Esq. (*pro hac vice* application pending)
James P. Chou, Esq. (*pro hac vice* application pending)
Jason L. Goldsmith, Esq. (*pro hac vice* application pending)
Angeline Lam Koo, Esq. (*pro hac vice* application pending)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

### CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 12, 2011.

*/s/ John T. Morrier*
John T. Morrier

56916.0/515049.1