IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DEUTSCHE BANK TRUST COMPANY AMERICAS, in its capacity as successor indenture trustee for certain series of Senior Notes, et al.,

Plaintiffs,

vs.

ANNE G. TAYLOR as an Individual and as a Trustee of the TRUST U/A DTD 10-16-2000 BY WALTER K. GRAHAM FBO WALTER E. GRAHAM, et al.,

Defendants.

Case No. 11-cv-10982

**DECLARATION OF JOHN T. MORRIER, ESQ. IN SUPPORT OF PLAINTIFFS' MOTION TO EXTEND TIME FOR SERVICE OF SUMMONS AND COMPLAINT**

I, John T. Morrier, Esq., pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct:

1. I am a partner at Casner & Edwards, LLP ("C&E"), co-counsel for the Plaintiffs in the above referenced action, and submit this declaration in support of Plaintiffs' Motion to Extend Time for Service of Summons and Complaint.

2. Except where otherwise stated, I make this declaration on the basis of my own personal knowledge, my review of bankruptcy pleadings and other relevant documents available to me as counsel to the Plaintiffs, and information provided to me by my colleagues at C&E and by co-counsel at Akin Gump Strauss Hauer and Feld, LLP. I am fully familiar with the facts set forth herein.

3. On June 2 and 3, 2011, Plaintiffs commenced 50 substantially similar actions, including the instant action (collectively, the "Avoidance Actions"), in courts located in 22 states, each alleging constructive fraudulent conveyance claims arising under state law (the

"SLCFC Claims") in connection with the failed leveraged buy-out (the "LBO") of Tribune Company ("Tribune") in 2007.[1] The amended and currently operative complaint in this action was filed on August 22, 2011 (the "Amended Complaint").

4. As alleged in the Amended Complaint, Tribune's bankruptcy proceedings were commenced on December 8, 2008 (the "Bankruptcy Proceedings") (Case No. 08-13141 (KJC)), and are currently pending before Judge Kevin J. Carey in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). Under sections 546(a) and 544(b) of the Bankruptcy Code, Debtors in the Tribune Bankruptcy Proceedings had the right during the first two years after the Bankruptcy Proceedings were commenced to bring the SLCFC Claims on behalf of individual Tribune creditors.[2]

5. The Debtors did not commence any SLCFC Claims against Tribune shareholders during the two-year period following commencement of the Bankruptcy Proceedings. Thus, DBTCA, Law Debenture, and others moved the Bankruptcy Court for an order providing, *inter alia*, that (i) individual creditors of Tribune regained the right to prosecute the SLCFC Claims against Tribune shareholders because the Debtors had failed to do so; and (ii) the automatic stay, to the extent otherwise applicable, did not bar Plaintiffs from bringing the SLCFC Claims against Tribune shareholders (the "Standing Motion"). As alleged in the Amended Complaint, on April 25, 2011, the Bankruptcy Court granted the Standing Motion and issued an order (the "Standing Order") permitting Plaintiffs to bring the SLCFC Claims, in part to ensure that they would be commenced on or before June 4, 2011—four years after Step One of the LBO closed—and thus avoid any argument that some of the SLCFC Claims could be barred by allegedly applicable

---

[1] Plaintiffs commenced more than one action in 19 of the 22 states, including Massachusetts, *Deutsche Bank Trust Company Americas, et al. v. Eaton Vance Multi Cap Growth Portfolio, et al.*, Civil Action No. 11-CV-10985-NMG (D. Mass. 2011), to address actual, potential, arguable or claimed ethical and business conflicts of interest involving Plaintiffs' counsel and certain defendants.

[2] The SLCFC Claims arise under the fraudulent transfer laws of New York, Illinois and Massachusetts.

statutes of limitations. The Standing Order also required Plaintiffs to seek an immediate stay of any action alleging SLCFC Claims (subject to certain caveats) pending further court order.

6. Plaintiffs went to work immediately in an effort to gather the information necessary to identify the appropriate defendants in connection with the SLCFC Claims, and to name and serve those defendants in the Avoidance Actions. On or around April 29, 2011, certain of the Plaintiffs and others issued a subpoena (the "Subpoena") in the Bankruptcy Proceedings to the Official Committee of Unsecured Creditors of Tribune (the "Committee") seeking, among other information, the addresses and precise names of each natural person and juridical entity that received cash proceeds and/or other consideration in connection with the LBO, and the amount each such person or entity received. Plaintiffs have also retained private investigators to obtain additional information, and have conducted their own inquiries using publicly available commercial databases.

7. Beginning in November, 2010, the Committee issued more than 1,600 subpoenas of its own seeking defendant identities and other data in connection with the Committee's adversary proceeding against, *inter alia*, Tribune's former shareholders in which the Committee alleges claims of intentional fraudulent transfer pursuant to the Bankruptcy Code. The Committee made a substantial initial production of shareholder data to the Plaintiffs on May 25, 2011, just ten days before the purported statute of limitations for certain of the SLCFC Claims arguably was set to expire. At the time, however, the Committee had not yet received all of the information sought by its subpoenas.[3]

---

[3] The Committee continues to pursue compliance with its subpoenas to this day. Indeed, the Committee recently advised Plaintiffs that it has yet to obtain the necessary naming and service information associated with several billion dollars worth of transfers, and that a motion or motions to compel production of the remaining data will likely be required. The Committee has not yet determined a schedule for bringing such motions, but even if it were to do so immediately, it is improbable that the Committee would obtain the necessary judicial relief—much less compliance from the parties subject to the subpoenas and any court orders—before the first quarter of 2012, at the earliest. In short, while the

8. On June 2 and 3, 2011, Plaintiffs filed the Avoidance Actions alleging the SLCFC Claims on behalf of the noteholders under the indentures for which Plaintiffs respectively act as trustees. This Court granted Plaintiffs' motion to stay the captioned action by order dated July 6, 2011.

9. Plaintiffs have been unable to complete service upon all of the named defendants in this action, and anticipate that substantially more than the initial 120 days provided under FRCP 4(m) will be required to permit discovery of additional necessary information and completion of service.

10. Plaintiffs have diligently sought, and continue to diligently seek, to identify and serve the defendants named in the instant case, but have faced serious, time-consuming challenges to doing so. Among other efforts, shortly after commencement of the action, Plaintiffs attempted personal service upon 49 of the named defendants through a private process server. As of September 8, 2011, there remained 18 named, domestic defendants who had not yet been successfully served. In addition, by way of further amendment Plaintiffs intend to make corrections to names and addresses set forth in the pleadings and/or certain of Plaintiffs' previously-served summons, and, may determine to individually name defendants within the putative defendant class. Out of an abundance of caution, Plaintiffs likely will seek to re-serve some or all parties that are affected by such corrections and additions with further process. Since filing the Complaint, Plaintiffs have received, and continue to receive, updated information with respect to these defendants, including by accessing commercial databases to check for correct names and addresses and by hiring private investigators to follow up on information

---

Committee has indicated that it will continue to produce to Plaintiffs information received by the Committee in response to its subpoenas, complete information needed to ensure proper identification and service on all parties may not be available for several months.

provided by the Committee. Plaintiffs also may be required to seek leave to obtain limited discovery directly from certain defendants in the Avoidance Actions.

11. Simultaneous with Plaintiffs' efforts to identify and properly serve defendants in this action, Plaintiffs also are attempting to carry out the same exercise with respect to more than a thousand other defendants in the rest of the Avoidance Actions pending around the country. Obtaining the voluminous data necessary to effectuate nationwide service is an enormous undertaking by itself, and Plaintiffs anticipate that additional obstacles to perfecting service are likely to arise even once the necessary information has been gathered. For example, Plaintiffs likely will be required to make multiple attempts to serve defendants using a variety of service methods authorized under the FRCP, deal with defendants who may seek to avoid or otherwise thwart Plaintiffs' attempts at service, and engage in further investigative efforts where necessary.

12. Given that the original complaint was filed on June 2, 2011, the original 120-day FRCP 4(m) and 15(c) periods have not yet expired.

Dated:	September 12, 2011
	Boston, Massachusetts

	Respectfully submitted,

	/s/ John T. Morrier
		John T. Morrier

CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 12, 2011.

                                        */s/ John T. Morrier*
                                        John T. Morrier

56919.0/515047.1