IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DEUTSCHE BANK TRUST COMPANY AMERICAS, in its capacity as successor indenture trustee for certain series of Senior Notes, LAW DEBENTURE TRUST COMPANY OF NEW YORK, in its capacity as successor indenture trustee for certain series of Senior Notes, and WILMINGTON TRUST COMPANY, in its capacity as successor indenture trustee for the PHONES Notes,

Plaintiffs,

v.

ANNE G. TAYLOR as an Individual and as a Trustee of the TRUST U/A DTD 10-16-2000 BY WALTER K. GRAHAM FBO WALTER E. GRAHAM, et al.,

Defendants.

Civil Action No.
1:11-CV-10982-NMG

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR (I) LEAVE TO FILE THE SECOND AMENDED COMPLAINT AND (II) AN ORDER CLARIFYING OR MODIFYING THE COURT'S PRIOR SEALING ORDER**

Pursuant to Federal Rules of Civil Procedure 5.2(e), 15(a), 21, and 26(c), and L.R. 7.2 and 15.1(B), Plaintiffs Deutsche Bank Trust Company Americas, in its capacity as successor indenture trustee for a certain series of Senior Notes ("DBTCA"), Law Debenture Trust Company of New York, in its capacity as successor indenture trustee for a certain series of Senior Notes ("Law Debenture"), and Wilmington Trust Company, in its capacity as successor indenture trustee for the PHONES Notes ("Wilmington Trust" and, together with DBTCA and Law Debenture, "Plaintiffs"), by and through their undersigned counsel, respectfully move this Court for (i) leave to file a second amended complaint (the "Second Amended Complaint"), and (ii) an order

clarifying or modifying the Court's Electronic Order Granting Motion for Leave to File Document Under Seal dated June 15, 2011 (the "Sealing Order") to permit Plaintiffs to file under seal in future filings, including Exhibit A to the Second Amended Complaint (the "Amended Exhibit A"), information regarding the payments (the "Shareholder Transfers") made to defendants by Tribune Company ("Tribune") in connection with its 2007 leveraged buyout (the "LBO"), or that could establish a link between a defendant and a party (a "Producing Party") who produced information to the Official Committee of Unsecured Creditors of Tribune (the "Committee"), and to serve individual defendants with versions of such filings that disclose information relating only to the specific defendant served.[1]

## PRELIMINARY STATEMENT

In this action, Plaintiffs seek to avoid and recover, under state law constructive fraudulent conveyance statutes, all transfers of proceeds received by former Tribune shareholders and other transferees in connection with the LBO, which precipitated the company's downward spiral into bankruptcy. First Am. Compl. ¶¶ 1-2. After obtaining relief from the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on April 25, 2011 that enabled Plaintiffs to file this action, Plaintiffs worked expeditiously and diligently to discover the identity of the thousands of shareholders and other transferees who received funds from Tribune in connection with the LBO, in advance of June 4, 2011—the date on which the statute of limitations for certain of Plaintiffs' claims arguably was set to expire. Plaintiffs' investigation in this regard is ongoing, as are Plaintiffs' efforts to ensure that the current defendants to this action have been

[1] A copy of Plaintiffs' proposed Second Amended Complaint, with the Amended Exhibit A redacted, is attached to Plaintiffs' Motion For (I) Leave To File The Second Amended Complaint And (II) An Order Clarifying Or Modifying The Court's Prior Sealing Order as Exhibit A. Upon resolution of this motion, and if the Court grants the relief requested herein, Plaintiffs will serve defendants with a version of the Amended Exhibit A that discloses the information pertaining to only the defendant served, and will file an unredacted version of the Amended Exhibit A under seal.

appropriately named and identified. Since the filing of the initial complaint in this action (the "Initial Complaint"), Plaintiffs have obtained information showing that certain defendants should be added to the action, that claims against certain defendants in their individual capacity should be omitted, and that information regarding other defendants, such as the manner in which they are identified in the caption or listed on Exhibit A to the Initial Complaint (the "Initial Exhibit A"), should be modified. Accordingly, Plaintiffs' seek leave to file the Second Amended Complaint, which would implement such additions, clarifications, and modifications to the parties named.[2]

Plaintiffs also request that the Court clarify or modify its prior Sealing Order so that Plaintiffs may file under seal in future filings, including the Amended Exhibit A, information regarding the Shareholder Transfers, or that could establish a link between a Producing Party and a defendant, pursuant to a Protective Order (the "Protective Order") entered by the Bankruptcy Court and related confidentiality agreement appended thereto (the "Confidentiality Agreement") that require Plaintiffs to limit the disclosure of such information, and to "take[] the necessary steps to file any . . . pleading [containing information concerning the timing and amount of the Shareholder Transfers] under seal."[3] Confidentiality Agreement ¶ 6. Plaintiffs ask that the Sealing Order be further clarified or modified so that Plaintiffs may serve individual defendants with versions of such documents that disclose information relating only to the specific defendant served.

Plaintiffs' requests should be granted. Motions for leave to amend a complaint or to add parties should be "freely" granted, unless dilatory motive, undue prejudice to the defending party, or

---

[2] Plaintiffs also seek leave to conform the language in Paragraphs 161 and 162 of Count Seven of the operative complaint to the text of MASS GEN. LAWS ch. 109A, §§ 6(a), 8, & 9, and to make minor, non-material typographical and formatting corrections in the body of the complaint.

[3] Copies of the Protective Order and the Confidentiality Agreement are attached to the Affidavit of John T. Morrier in Support of Plaintiffs' Emergency *Ex Parte* Motion to File Exhibit A to the Complaint Under Seal and to Serve the Complaint with a Redacted Exhibit A That Discloses Only Information Relating to the Specific Defendant Served dated June 2, 2011, as Exhibit 1.

futility of the amendment is shown. Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Savoy v. White*, 139 F.R.D. 265, 267 (D. Mass. 1991). None of these factors are present here. Rather, Plaintiffs seek to amend the complaint at the infancy of this case—prior to the conduct of any discovery, before the filing of any answers or substantive motion practice, and while the action is stayed. Moreover, Plaintiffs' request to amend is based on their efforts to properly identify each defendant, to ensure that information regarding each defendant is correct and appropriately stated, and to add new defendants discovered since the Initial Complaint was filed. No new claims or legal theories of liability are alleged.

With respect to sealing, pursuant to Federal Rules of Civil Procedure 26(c), courts may enter a protective order upon a finding of "good cause," and courts have considerable discretion in determining whether such good cause exists. *Dunkin Donuts Franchised Restaurants, LLC v. Agawam Donuts, Inc.*, No. 07-11444, 2008 WL 427290, at *1 (D. Mass. 2008). Plaintiffs' Motion to file the Initial Exhibit A under seal, which was granted by the Court, was premised on the contention that good cause exists to preserve the confidentiality of information regarding the Shareholder Transfers or information that could establish a link between a Producing Party and a defendant pursuant to the Protective Order. As such, the Sealing Order should be clarified or modified so that Plaintiffs may file this type of information under seal in future filings, including the Amended Exhibit A, and may serve individual defendants with redacted versions of such filings that disclose only information relating to the specific defendant served.

**RELEVANT BACKGROUND**

Plaintiffs DBTCA and Law Debenture are the successor indenture trustees for certain series of Senior Notes issued by Tribune, and Plaintiff Wilmington Trust is the successor indenture trustee for the PHONES Notes issued by Tribune (each as defined in the First

Amended Complaint). On June 2, 2011, Plaintiffs, acting in their capacities as successor indenture trustees and pursuant to their fiduciary duties thereunder, commenced 50 substantially similar actions, including the instant action (collectively, the "Avoidance Actions"), in courts located in 22 states.[4] Plaintiffs filed the first amended complaint (the "First Amended Complaint"), which is currently operative, as a matter of course pursuant to Rule 15 of the Federal Rules of Civil Procedure on August 22, 2011.[5]

Each Avoidance Action alleges constructive fraudulent conveyance claims arising under state law. The Avoidance Actions seek to claw back from approximately 35,000 former shareholders of Tribune and other transferees billions of dollars that were fraudulently conveyed in connection with the disastrous 2007 LBO that rendered the company insolvent, without adequate capital, and without the ability to pay its debts as they came due. First Am. Compl. ¶¶ 1-12.

Pursuant to a motion filed by Plaintiffs on July 1, 2011, this Court stayed this action by order dated July 6, 2011 (the "Stay Order"). The Stay Order stays defendants' time to answer or otherwise respond to the operative complaint, and further provides that, notwithstanding the stay, Plaintiffs are permitted "to amend [the] Complaint or file [a] motion for leave to amend [the] Complaint . . . ." Memorandum of Law in Support of Plaintiffs' Motion to Stay [Docket No. 11] at 17.

***Facts Relating to Plaintiffs' Motion for Leave to File the Second Amended Complaint***

---

[4] In several jurisdictions Plaintiffs were required to commence multiple actions, each naming different defendants, because of actual, potential, arguable or claimed ethical and/or business conflicts of interest involving Plaintiffs' counsel (and in certain instances Plaintiffs' local counsel) and certain defendants.

[5] The First Amended Complaint made various jurisdictional and venue-related amendments, a small number of additions to or clarifications of the facts relating to Plaintiffs' claims, and corrections to minor typographical errors.

Tribune's bankruptcy proceedings were commenced on December 8, 2008 (the "Bankruptcy Proceedings") (Case No. 08-13141 (KJC)), and are currently pending before Judge Kevin J. Carey in the Bankruptcy Court. The debtors (the "Debtors") and certain designated estate representatives in the Bankruptcy Proceedings had the exclusive right during the first two years after the Bankruptcy Proceedings were commenced to bring state law constructive fraudulent conveyance claims, as well as certain other causes of action arising under state law.

The Debtors did not commence any such claims during the two-year period following commencement of the Bankruptcy Proceedings. Thus, DBTCA, Law Debenture, and others moved the Bankruptcy Court for an order providing, *inter alia*, that (i) individual creditors of Tribune regained the right to prosecute state law constructive fraudulent conveyance claims because the Debtors had failed to do so; and (ii) the automatic stay, to the extent otherwise applicable, did not bar Plaintiffs from bringing these claims (the "Standing Motion"). On April 25, 2011, the Bankruptcy Court granted the Standing Motion and issued an order (the "Standing Order") permitting Plaintiffs to bring state law constructive fraudulent conveyance claims. The Standing Order also required Plaintiffs to seek an immediate stay of any action alleging state law constructive fraudulent conveyance claims (subject to certain exceptions), pending further court order. First Am. Compl. ¶ 13.

Plaintiffs went to work immediately in an effort to gather the information necessary to identify the appropriate defendants to the Avoidance Actions, so that those individuals and entities could be named and served. Much of this information had already been gathered by the Committee, which began issuing more than 1,600 subpoenas of its own in November 2010 seeking defendant identities and other data in connection with the Committee's adversary proceeding against Tribune's former shareholders and other transferees asserting claims for

intentional fraudulent transfer pursuant to the Bankruptcy Code. Accordingly, on April 29, 2011, certain of the Plaintiffs and others issued a subpoena (the "Discovery Subpoena") to the Committee in the Bankruptcy Proceedings seeking, among other information, the addresses and precise names of each natural person and juridical entity that received cash proceeds in connection with the LBO, and the amount each such person or entity received.

The Committee made a substantial initial production of shareholder data to Plaintiffs on May 25, 2011, just ten days before the purported statute of limitations for certain of Plaintiffs' state law constructive fraudulent conveyance claims arguably was set to expire.[6] Plaintiffs understand, however, that the Committee has not yet received all of the information requested pursuant to its subpoenas, and the Committee has indicated that it intends to continue to produce to Plaintiffs additional information in response to the Discovery Subpoena as the Committee receives such information.

Since the filing of the Avoidance Actions, Plaintiffs have continued to receive new information from the Committee regarding appropriate defendants to the Avoidance Actions, and have pursued such information from other sources as well, including by retaining private investigators and conducting their own inquiries using publicly available commercial databases. Plaintiffs also continue to review and synthesize the voluminous information they received from the Committee prior to initiating this action. Additionally, Plaintiffs are engaged in ongoing discussions with certain defendants regarding the amount of Shareholder Transfers they received and whether they are appropriately named and identified in this action. These efforts have revealed that certain defendants should be added to the action, that claims against other defendants in their individual capacity should be omitted, and that certain information regarding

[6] Plaintiffs do not concede that the statute of limitations for any of their claims expired in June 2011, and reserve all of their rights with respect to this issue.

the existing defendants' receipt of funds, the spelling of their names, their addresses, or the way they are identified in the caption or Initial Exhibit A should be updated.

***Facts Relating to Plaintiffs' Motion for an Order Clarifying or Modifying the Sealing Order***

Prior to filing this action, Plaintiffs filed an emergency *ex parte* motion with the Court (the "Initial Sealing Motion") seeking leave to file under seal portions of the Initial Exhibit A, and to serve defendants with a redacted version of Exhibit A that disclosed such information only with respect to the defendant served. Plaintiffs did so because the Initial Exhibit A listed the amount of the Shareholder Transfers each defendant received and, where known, when such transfers were made, as well as the name and address of each defendant, which, in certain instances, could establish a link between a defendant and a Producing Party. This information is subject to the protections of the Protective Order, pursuant to which the Bankruptcy Court authorized the Committee to produce to Plaintiffs the information sought by the Discovery Subpoena, *provided that* Plaintiffs and other parties requesting such information execute the Confidentiality Agreement. Paragraph six of the Confidentiality Agreement, which was subsequently executed by counsel for Plaintiffs and the Committee, requires Plaintiffs to refrain from disclosing any association or link between a named defendant and a Producing Party, and to "take[] the necessary steps to file . . . under seal" any pleading disclosing information "concerning the timing and amount of" Shareholder Transfers to defendants. Confidentiality Agreement ¶ 6.

The Court granted the Initial Sealing Motion and entered the Sealing Order on July 6, 2011. The Sealing Order permitted Plaintiffs to file the Initial Exhibit A under seal and serve individual defendants with the Initial Complaint and redacted Initial Exhibit A that disclosed

only information relating to the specific defendant served. To date, no defendant has requested that the Sealing Order be vacated.

## ARGUMENT

### I. Plaintiffs Should Be Permitted To File The Second Amended Complaint

Plaintiffs should be permitted to file the Second Amended Complaint, which is designed only to (i) add new defendants, (ii) where appropriate, alter the capacity in which certain defendants have been named so that they are being sued only in their fiduciary, rather than their individual, capacity, (iii) correct typographical errors in the names of certain defendants, (iv) correct and clarify the formatting of the caption and the identification of defendants, (v) amend the alleged amounts of the Shareholder Transfers received by certain defendants, (vi) conform the language in Paragraphs 161 and 162 of Count Seven of the operative complaint to the text of MASS. GEN. LAWS ch. 109A, §§ 6(a), 8, & 9, and (vii) make minor, non-material typographical and formatting corrections in the body of the complaint. Plaintiffs do not seek to add new claims or new legal theories of liability.

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, a party wishing to amend a complaint other than as a matter of course under Rule 15(a)(1) must obtain the consent of the opposing party or leave of the court. Leave of court should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foman*, 371 U.S. at 182 (instructing lower courts to heed Rule 15(a)(2)'s mandate to freely grant leave to amend in the interest of justice). Courts have interpreted this mandate to hold that motions to amend a complaint should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile. *Savoy*, 139 F.R.D. at 267.

Federal Rule of Civil Procedure 21 provides, in relevant part, that "on motion, or on its own, the court may at any time, on just terms, add or drop a party." Courts apply the same

liberal standard applicable to Rule 15 when considering a motion to add a party under Rule 21. *See Travelers Property Cas. Co. of America v. Noveon, Inc.*, 248 F.R.D. 87, 90 (D. Mass. 2008) (allowing motion to amend complaint to add defendants); *see also Acosta-Mestre v. Hilton Int'l*, 156 F.3d 49, 51 (1st Cir. 1998) (assessing motion to amend to add defendant under Rule 15(a) standard); *Wiggins v. District Cablevision, Inc.*, 853 F. Supp. 484, 499 n.29 (D.D.C. 1994) (noting that "it is well established that after a responsive pleading has been served, the standards for adding parties are the same whether the motion is made under Rule 15 or Rule 21."). In deciding whether to allow the addition of parties under Rule 21, courts consider "basic principles such as fundamental fairness and judicial economy, whether an order under [Rule 21] would prejudice any party or would result in undue delay, and the threats of duplicitous litigation and inconsistent jury verdicts." *John S. Clark Co., Inc. v. Travelers Indem. Co. of Ill.,* 359 F. Supp. 2d 429, 440 (M.D.N.C. 2004). Amendments that seek to add parties are generally permitted, and courts regularly grant motions to amend complaints to add newly discovered defendants. *See Travelers Property*, 248 F.R.D. at 90 (permitting amendment that then defeated federal diversity jurisdiction); *Covel v. Safetech, Inc.,* 90 F.R.D. 427, 434 (D. Mass. 1981) (permitting addition of defendant five years after suit filed after finding valid reason for delay) .

There is no basis on which to deny Plaintiffs' motion for leave to file the Second Amended Complaint. Given the stage of these proceedings, there simply is no possibility that the amendment would prejudice the current or newly added defendants, Plaintiffs have not acted in bad faith, and the amendments are not futile. "A prejudicial amendment is one that raises a new legal theory that would require the gathering and analysis of facts not already considered by the defendant, and is offered shortly before or during trial." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (citations omitted). The Second Amended Complaint does not raise any "new

legal theories" requiring the "gathering and analysis" of new facts, nor is the amendment being offered "shortly before or during trial." To the contrary, this case is in its infancy. No initial disclosures have been filed, the Rule 26 discovery conference has not yet occurred, and no discovery has been taken. Moreover, given that this action has been stayed, and that all defendants' obligations to answer or otherwise respond to the First Amended Complaint have been deferred pending further order of the Bankruptcy Court or this Court, the Second Amended Complaint will not delay this proceeding or harm the existing or newly-added defendants, in any way.

Nor can it be argued that Plaintiffs are acting in bad faith by seeking leave to file the Second Amended Complaint. "When determining whether bad faith is present, the court typically will take into account the movant's delay in seeking the amendment." *Shinn v. Greeness*, 218 F.R.D. 478, 486 (M.D.N.C. 2003) (citation omitted). Here, Plaintiffs have worked expeditiously to gather information regarding natural persons and juridical entities who owned stock that was redeemed by Tribune in connection with the LBO, or received proceeds, directly or indirectly, from Tribune in connection with the LBO, and to synthesize that information in a manner that allows Plaintiffs to appropriately name and identify the defendants to this action in a timely manner. The amendments set forth in the Second Amended Complaint are the results of these good faith efforts.

Finally, the proposed amendments embodied in the Second Amended Complaint are not futile. An amendment is futile only if it "fails to satisfy the requirements of the federal rules." *Katyle v. Penn. Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (internal citation omitted). An amendment that adds parties is futile only when there is no basis in the federal rules to hold the party to be added liable. *See, e.g.*, *Eisenberg v. Wall*, 607 F. Supp. 2d 248, 258 (D. Mass.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DEUTSCHE BANK TRUST COMPANY AMERICAS, in its capacity as successor indenture trustee for certain series of Senior Notes, LAW DEBENTURE TRUST COMPANY OF NEW YORK, in its capacity as successor indenture trustee for certain series of Senior Notes, and WILMINGTON TRUST COMPANY, in its capacity as successor indenture trustee for the PHONES Notes,

Plaintiffs,

v.

ANNE G. TAYLOR as an Individual and as a Trustee of the TRUST U/A DTD 10-16-2000 BY WALTER K. GRAHAM FBO WALTER E. GRAHAM, et al.,

Defendants.

Civil Action No.
1:11-CV-10982-NMG

**CERTIFICATE OF SERVICE**

I, John T. Morrier, Esq., certify that the following documents, filed through the ECF system were served (1) electronically to the registered participants as identified on the Notice of Electronic Filing and (2) to all other, non-registered parties via first class mail, on October 13, 2011:

1. Plaintiffs' Motion for (I) Leave to File the Second Amended Complaint and (II) An Order Clarifying or Modifying the Court's Prior Sealing Order;

2. Memorandum in Support of Plaintiffs' Motion for (I) Leave to File the Second Amended Complaint and (II) An Order Clarifying or Modifying the Court's Prior Sealing Order;

3. Certification Pursuant to L.R. 7.1 and 15.1;

4. Proposed Order;

5. Proposed Second Amended Complaint; and

6. Redacted Exhibit A to the Proposed Second Amended Complaint.

/s/ John T. Morrier
John T. Morrier